IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| THELMA JONES, PRIYIA LACEY, FAISA ABDI, ALI ALI, RUKIYA HUSSEIN, LUCIA PORRAS, DAVID TROTTER-FORD, AND SOMALI COMMUNITY RESETTLEMENT SERVICES, INC., | Case: 18-cv-1643 (JRT/HB) |
| Plaintiffs, | |
| v. | |
| CITY OF FARIBAULT, | |
| Defendant. | |

## ANSWER TO AMENDED COMPLAINT

COMES NOW Defendant City of Faribault ("City"), for its Answer to Plaintiffs' Amended Complaint, states and alleges as follows:

### INTRODUCTION

1.     The purpose of the City's Rental Licensing Ordinance (the "Ordinance") is to provide decent, safe, sanitary, and crime-free rental housing to all residents of the City, regardless of their race or nationality. *See* Faribault, Minn., Code of Ordinances, ch. 7, Art. V, ("Ord.") Sec. 7-36(1) (2017).

2.     The Ordinance requires rental dwellings to be maintained in compliance with all federal, state, and local laws, including the City's Property

Maintenance Code, the State Building Code, the State Fire Code, and all applicable zoning codes. Ord. Sec. 7-38(e)(4).

3.       The Ordinance also incorporates a crime free housing program. *See* Ord. Sec. 7-42. The purpose of the program is as follows:

> The city council finds that repeated police calls to rental dwelling units in the city related to disturbances or criminal activity have taxed law enforcement resources. The city council also finds that persons residing in rental dwelling units who engage in disorderly conduct or cause nuisance conditions create an unacceptable environment for others living in close proximity, thereby threatening the public safety and welfare of the community. In order to preserve and protect the city's neighborhoods and to promote public safety, the city council enacts this section. For the purpose of this section of the city Code, the crime-free housing program shall refer to the Minnesota Crime Prevention Association's Crime-Free Multi Housing Program, unless otherwise indicated or amended by this section. The phases of the program include, but are not limited to, the conditions set forth below.

Ord. Sec. 7-42(a).

4.       The Crime Free Multi-Housing ("CFMH") Program started in Mesa, Arizona in 1992, and came to Minnesota in 1994. The program has been very successful, earning the endorsements of the Minnesota Chiefs of Police Association, the Minnesota State Sheriffs Association, Minnesota Crime Prevention Association, and the Minnesota Multi-Housing Association. Minnesota currently has over 120 law enforcement agencies participating in CFMH or similar programs. CFMH can offer a more stable and satisfied tenant

2

base, increased demand for rental units, and gives management a reputation for being active and invested in their properties.[1]

5.      The City had been contemplating the adoption of a crime free housing program as early as 2005 because of problems with criminal activity in the community. The City, however, did not move forward with the program at the time because of budgeting and staffing considerations.

6.      As a part of his Organizational "Best Practices" Assessments for the City of Faribault Police Department, the City's outside consultant, Richard Setter, recommended the City implement a CFMH Program in 2008, and again in 2012.

7.      Faribault Police Chief Andy Bohlen started with the City in late 2012, was familiar with the successful implementation of the program in other communities, and also recommended the City adopt it as part of his 2013 budget request:

> The city had previously committed to the CFMH program, but was dropped due to budget cuts. CFMH was a key recommendation of both the 2008 and 2012 Setter reports. CFMH has been implemented in numerous cities, which have since experienced a drop in related crimes. CFMH will help ensure safe, quality rental housing by developing partnerships with the police department and landlords.

8.      Before the Ordinance was passed, the City had three problem rental properties, which accounted for 103 police response calls in a 12-month period.

---

[1] http://www.mncpa.net/what-we-do/crime-free-multi-housing (last viewed July 13, 2018).

This resulted in over $10,000 in police time and taxpayer money to pay for the public safety responses to just three properties. Incidentally, one of these problem properties was located at 1101 Mitchell Drive, where Plaintiff Thelma Jones and her family resided. Their neighbors have described the criminal and nuisance activity at 1101 Mitchell Drive as a living nightmare. Chief Bohlen has cited these three properties as demonstrating a need for the program.

9.     The overall crime statistics also demonstrated a need for the program. Cities report criminal data as Part I and Part II crimes. Part I are the most violent crimes (assault/murder/sexual assault) and Part II are the lesser crimes (misdemeanor theft). Those numbers are added together and a crime rate number is created. The City of Faribault is in the top 10-15% in the State of Minnesota in crime rate. In cities with a population of 20 to 30 thousand, the City is number 5 in the entire state. These statistics are unacceptable and detrimental to the quality of the community and rental base.

10.     Plaintiffs' allegations the City is targeting the Somali community or part of some sort of nefarious scheme to address purported downtown loitering concerns is patently false. The Police Department, in particular, has worked diligently to foster a good relationship with the Somali community. For example, Chief Bohlen worked with leaders in the Somali community (and also brought the first two Somali police officers in the State of Minnesota to Faribault) to help

create a DVD in 2013, entitled "Public Safety – Connecting with the Somali Community." Here is a link to the DVD: [Click Here for Video](#)

### RESPONSE TO SPECIFIC ALLEGATIONS

11.     The City denies each and every matter, allegation or thing contained in Plaintiffs' Amended Complaint except as may hereinafter be admitted or qualified.

12.     With respect to paragraph 1, the City admits the Plaintiffs have challenged the legality of the Ordinance, a copy of which is attached as Exhibit A to the Amended Complaint. The purpose of the Ordinance is to provide decent, safe, sanitary, and crime-free rental housing to all residents of the City, regardless of their race or nationality. *See* Ord. Sec. 7-36(1).

13.     With respect to paragraph 2, the City admits Section 7-38 of the Ordinance states a license is required to operate a rental dwelling within the City. The City denies the remaining allegation, as Plaintiffs improperly characterize the Ordinance that speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the Ordinance.

14.     With respect to paragraphs 3 and 4, the City denies the allegations. The City avers it enacted the Ordinance to provide decent, safe, sanitary, and crime-free rental housing to all residents of the City, regardless of their race or

nationality. The City further avers the implementation of the crime free housing program had nothing to do with any purported downtown crime problem and, as such, the cherry-picked comments from Chief Bohlen are taken completely out of context, particularly since Chief Bohlen was one of the advocates for the adoption of the crime free housing program.

15.    With respect to paragraph 5, the City admits Section 7-42(e) of the Ordinance requires a crime free/drug free house lease addendum, which provides for evictions in certain legally sufficient circumstances. The City avers this provision of the Ordinance speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the Ordinance.

16.    With respect to paragraph 6, the City avers the Ordinance was lawfully and properly adopted in all respects. The City further avers "undesirable" refers to habitual unlawful criminal activity of problem renters, and not their race or nationality.

17.    With respect to paragraph 7, the City admits Section 7-42(d) of the Ordinance requires all rental housing licensees to "conduct criminal background checks on all prospective tenants eighteen (18) years or older." The City denies it instructs landlords to refuse to rent to potential tenants with criminal records, and further denies the Ordinance has any discriminatory effect.

6

18.     With respect to paragraph 8, the City admits Section 7-40(h) of the Ordinance states the occupancy standards for rental dwellings are regulated by the City of Faribault Unified Development Ordinance and Section 404 of the Faribault Uniform Housing Code. The City denies these uniform standards have a discriminatory effect on people of Somali national origin.

19.     With respect to paragraphs 9 and 10, the City denies said allegations.

20.     With respect to paragraphs 11 and 12, the City avers Plaintiff Thelma Jones and her family are well-known in the City because of the excessive number of police calls they have caused because of their penchant for illegal and nuisance activity that disrupted the entire neighborhood on Mitchell Drive – a situation residents have described as a living nightmare. The City avers the current residents of 1101 Mitchell Drive are black, and are honest and law-abiding citizens, who take care of their property, and respect their neighbors and law enforcement; a stark contrast to the family of Plaintiff Thelma Jones.

21.     With respect to paragraphs 13 through 17, the City is without sufficient information to admit or deny said allegations and demands strict proof thereof.

22.     With respect to paragraph 18, the City admits Plaintiff Somali Community Resettlement Services, Inc. ("SCRS") is a non-profit corporation. The

City avers it reached out to SCRS to work with the City during the adoption and/or amendment of the Ordinance to address any of their concerns, but unfortunately SCRS has chosen litigation instead. The City further avers it also reached out to representatives of the American Civil Liberties Union of Minnesota to address any concerns they may have had during the most recent revision to the Ordinance, but they were silent and then resorted to this ill-conceived litigation.

23. With respect to paragraph 19, the City admits it is a Minnesota municipality, and the Faribault Police Department is its law enforcement agency. The City denies the remainder of the allegations.

24. With respect to paragraphs 20 through 23, the City admits Plaintiffs have asserted federal and state claims, and that venue is proper, but denies Plaintiffs are entitled to any relief whatsoever.

25. With respect to paragraphs 24 through 32, the City is without sufficient information to admit or deny said allegations and demands strict proof thereof.

26. With respect to paragraph 33, the City admits the total number of crimes in Faribault dropped between 2000 and 2014. The City avers it is still in the top 10-15% in the State of Minnesota in crime rate, and in cities with a population of 20 to 30 thousand, the City is number 5 in the entire state.

27.     With respect to paragraph 34, the City admits "some Faribault residents reported concerns with crime and safety, especially downtown." The City denies "loitering" by Somali residents was the "locus of this concern," and further avers any such concerns were not the reason for the adoption of the Ordinance.

28.     With respect to paragraph 35, the allegations pertain to the 2011 Downtown Faribault Market Analysis, which speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the report.

29.     With respect to paragraph 36, the City is without sufficient information to admit or deny said allegations and demands strict proof thereof.

30.     With respect to paragraph 37, the allegations pertain to a 2013 Faribault Daily News article, which has not been independently verified, and therefore, the City is without sufficient information to admit or deny said allegations and demands strict proof thereof.

31.     With respect to paragraph 38, the City is without sufficient information to admit or deny said allegations and demands strict proof thereof.

32.     With respect to paragraph 39, the City admits the Police Department created a video in 2013 with the involvement of Asher Ali, the head of the Faribault Diversity Coalition, and also enlisted the assistance of the first two

Somali police officers in the State of Minnesota to help foster a good relationship with the Somali community.

33.     With respect to paragraph 40, the City denies the allegations.

34.     With respect to paragraph 41, the City admits on October 15, 2013 the Faribault City Council's Joint Committee held a "Discussion Regarding Downtown."

35.     With respect to paragraphs 42 and 43, the City admits Exhibit B to the Amended Complaint is a copy of Chief Bohlen's October 10, 2013 Memorandum to City Administrator Anderson, which speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the memo.

36.     With respect to paragraph 44, the City admits the Supreme Court has made a ruling regarding loitering in *Chicago v. Morales*, 527 U.S. 41 (1999), which speaks for itself.

37.     With respect to paragraph 45, the City denies it ever discussed an "unconstitutional proposal." The City avers Chief Bohlen's memo speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the memo.

38.     With respect to paragraph 46, the City denies said allegations.

39.     With respect to paragraph 47, the City admits on March 18, 2014 the Joint Committee discussed a "Rental Licensing Ordinance and Crime Free Housing Program."

40.     With respect to paragraph 48, the City avers the Ordinance, which includes the Crime Free Multi-Housing Program, has nothing to do with any purported loitering concerns. The City further avers the City is committed to providing safe, sanitary and crime-free rental housing to all residents of the City, regardless of their race or nationality.

41.     With respect to paragraph 49, the City admits Exhibit C is a March 18, 2014 Memorandum from Peter Waldock to then-City Administrator Brian Anderson, which speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the memo, and further denies any purported downtown crime concerns was the reason for the enactment of the Ordinance.

42.     With respect to paragraph 50, the City denies said allegations.

43.     With respect to paragraph 51, the City admits the CFMH Program was first successfully developed at the Mesa Arizona Police Department in 1992, and that the International Crime Free Multi-Housing Program has spread to nearly 2,000 cities in 44 U.S. states and Puerto Rico, 5 Canadian Provinces, Mexico, England, Finland, Japan, Russia, Malaysia, Nigeria, and Afghanistan.

The City avers the Ordinance has successfully advanced the City's legitimate goal of providing safe, sanitary and crime-free rental housing to all residents of the City, regardless of their race or nationality.

44.     With respect to paragraph 52, the City admits the Joint Committee discussed the draft ordinance at its April 29, 2014 meeting. The referenced Bohlen/Waldock memorandum speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the memo.

45.     With respect to paragraph 53, the City admits the allegations.

46.     With respect to paragraph 54, the City avers the Ordinance, which includes a crime free housing program, has nothing to do with any purported loitering concerns. The City further avers the City is committed to providing safe, sanitary and crime-free rental housing to all residents of the City, regardless of their race or nationality.

47.     With respect to paragraphs 55 through 58, the City avers the purpose of the Ordinance is to provide safe, sanitary and crime-free rental housing to all residents of the City, regardless of their race or nationality. The City further avers "undesirable" refers to the habitual unlawful criminal activity of problem renters, and not their race or nationality, and prior to the enactment of the Ordinance, tended to jump from one Faribault property to another and

cause ongoing problems for the police, the landlords, and other tenants or residents. The City further avers any purported comments concerning the revitalization of the downtown area was not a reason for the adoption of the Ordinance.

48.    With respect to paragraphs 59 through 63, the City admits it revised the Ordinance in 2017, which had the same purpose as the original Ordinance enacted in 2014.

49.    With respect to paragraph 64, the City denies the allegations.

50.    With respect to paragraph 65, the City's budget document for the 2018 fiscal year speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the budget document.

51.    With respect to paragraph 66, the City denies the allegations.

52.    With respect to paragraphs 67 and 68, the City is without sufficient information to admit or deny said allegations and demands strict proof thereof. The City avers the Ordinance, which includes the crime free housing program, has nothing to do with any purported loitering or downtown revitalization concerns.

53.    With respect to paragraph 69, the City denies the allegations.

54.     With respect to paragraph 70, the allegations pertain to the 2011 Downtown Faribault Market Analysis, which speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the report.

55.     With respect to paragraphs 71 through 73, the allegations pertain to the Community Vision 2040 Report, which speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the report.

56.     With respect to paragraphs 74 through 76, the City admits the Faribault Housing and Redevelopment Authority ("HRA") established a Downtown Housing Improvement Program.

> The mission of the HRA is to provide a vehicle to eliminate blight and fulfill the housing needs of the Faribault community.

The City avers, in 2016, the HRA described the program as follows:

> Downtown Faribault has a wide variety of housing types and is home to many different demographics. Based on a detailed downtown housing study and inventory conducted in 2010, there are 282 rental units in 68 buildings in the downtown area. This does not include Heritage Bluffs, Trails Edge or any units south of Division Street. Of these, 18 units are "subsidized", 176 are "affordable" and 88 are "market-rate". In addition, 100 of the units are considered to be in good condition, 73 units require "minor rehab" and 109 require "major rehab".

> Significant investment has been made in downtown over the last few years, both by the public and private sectors. New utilities, streets, sidewalks and lighting have been installed. Numerous

storefronts have been renovated and several exciting new businesses have opened. There is a desire to continue to capitalize on this energy and revitalization by improving and upgrading the residential options downtown. One of the recommendations of the downtown housing study was to develop quality market-rate units in upper floors of downtown buildings, including renovating substandard housing on upper floors into high quality market-rate housing.

57.     With respect to paragraph 77, the City denies the allegations.

58.     With respect to paragraphs 78 and 79, the City denies the allegations.

59.     With respect to paragraphs 80 through 99, the allegations set forth characterizations of the Ordinance, which speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the Ordinance.

60.     With respect to paragraph 100, the City is without sufficient information to admit or deny said allegations and demands strict proof thereof.

61.     With respect to paragraph 101, the City denies the allegations.

62.     With respect to paragraphs 102 through 110, the allegations set forth characterizations of the Ordinance, which speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the Ordinance.

63.     With respect to paragraphs 111 and 112, the City denies the allegations.

64.     With respect to paragraphs 113 and 114, the City is without sufficient information to admit or deny said allegations and demands strict proof thereof.

65.     With respect to paragraph 115, the City denies the first allegations in the first sentence, and is without sufficient information to admit or deny the remaining allegations and demands strict proof thereof.

66.     With respect to paragraphs 116, the City is without sufficient information to admit or deny said allegations and demands strict proof thereof.

67.     With respect to paragraphs 117 through 120, the allegations set forth characterizations of the Ordinance, which speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the Ordinance.

68.     With respect to paragraphs 121 through 122, the City avers any purported inconsistency on the City's website does not alter the plain language of the Ordinance, or how it has been implemented.

69.     With respect to paragraph 123, the City denies the allegations.

70.     With respect to paragraphs 124 through 126, the allegations set forth characterizations of a document entitled "The Importance of Screening" and which is attached as Exhibit D to the Amended Complaint, which speaks for

itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the document.

71. With respect to paragraph 127, the allegations set forth characterizations of the Ordinance, which speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the Ordinance.

72. With respect to paragraphs 128 through 130, the City is without sufficient information to admit or deny said allegations and demands strict proof thereof.

73. With respect to paragraphs 131 through 133, the allegations set forth characterizations of the Ordinance, which speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the Ordinance.

74. With respect to paragraph 134, the City denies the Ordinance violates state law.

75. With respect to paragraphs 135 and 136, the City is without sufficient information to admit or deny said allegations and demands strict proof thereof.

76.     With respect to paragraphs 137 through 142, the City is without sufficient information to admit or deny said allegations and demands strict proof thereof.

77.     With respect to paragraph 143, the City denies the allegations.

78.     With respect to paragraphs 144 and 145, the City denies the allegations.

79.     With respect to paragraphs 146 through 148, the City denies the referenced memoranda support Plaintiffs' spurious allegations. The City avers it enacted the Ordinance to provide decent, safe, sanitary, and crime-free rental housing to all residents of the City, regardless of their race or nationality. The City further avers the implementation of the crime free housing program had nothing to do with any purported downtown crime problem and, as such, the cherry-picked comments from Chief Bohlen and Mr. Waldock are taken completely out of context.

80.     With respect to paragraphs 149 and 150, the City denies the allegations.

81.     With respect to paragraph 151, the City admits the purpose of the 2017 revision to the Ordinance is set forth in Section 7-36(1). The City denies there was any "animus" in the passage of either the 2014 Ordinance or the 2017 revision to the Ordinance.

82.     With respect to paragraphs 152 through 154, the City denies the allegations.

83.     With respect to paragraph 155, the City denies the Ordinance will have a disparate impact on Black people. Plaintiffs cite a number of articles, which do not support their claims of a purported disparate impact caused by the Ordinance.

84.     With respect to paragraphs 156 and 157, the City denies the allegations.

85.     With respect to paragraphs 158 through 160, the City avers the Ordinance has nothing to do with any purported loitering or downtown revitalization concerns.

86.     With respect to paragraphs 161 through 163, the City denies the allegations. The City avers the Ordinance has nothing to do with any purported loitering, "negative perceptions," or downtown revitalization concerns.

87.     With respect to paragraph 164, the City denies the allegations. The City avers the HRA, and not the City, created and administers the Downtown Housing Improvement Program, which has nothing to do with the Ordinance.

88.     With respect to paragraphs 165 through 168, the City denies the allegations.

89.    With respect to paragraphs 169 through 171, the allegations set forth characterizations of information distributed by the United States Department of Housing and Urban Development ("HUD"), which speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the information distributed by HUD.

90.    With respect to paragraphs 172 through 174, the City denies the allegations.

91.    With respect to paragraph 175, the allegations set forth characterizations of information distributed by HUD, which speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the information distributed by HUD.

92.    With respect to paragraphs 176 through 181, the City is without sufficient information to admit or deny said allegations and demands strict proof thereof.

93.    With respect to paragraphs 182 and 183, the City denies the allegations.

94.    With respect to paragraph 184, the City avers the entire text of Section 7-42(a) of the Ordinance, in pertinent part, provides:

> *Purpose.* The city council finds that repeated police calls to rental dwelling units in the city related to disturbances or criminal activity have taxed law enforcement resources. The city council also finds that persons residing in rental dwelling units who engage in

disorderly conduct or cause nuisance conditions create an unacceptable environment for others living in close proximity, thereby threatening the public safety and welfare of the community. In order to preserve and protect the city's neighborhoods and to promote public safety, the city council enacts this section. For the purpose of this section of the city Code, the crime-free housing program shall refer to the Minnesota Crime Prevention Association's Crime-Free Multi Housing Program, unless otherwise indicated or amended by this section.

The City avers Plaintiffs' suggestion this program is designed to keep "people of color out of Faribault" is frivolous, vexatious, and a sham.

95.     With respect to paragraphs 185 through 187, the City denies the allegations, as Plaintiffs clearly do not understand the plain language of the Ordinance because the Ordinance does not prohibit a landlord from renting to anyone with a criminal record.

96.     With respect to paragraph 188, the City denies the allegations.

97.     With respect to paragraphs 189 and 190, the allegations set forth characterizations of the Ordinance, which speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the Ordinance.

98.     With respect to paragraph 191, the allegations set forth characterizations of information distributed by HUD, which speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the information distributed by HUD.

99.    With respect to paragraphs 192 through 194, the City denies the allegations.

100.    With respect to paragraphs 195 through 197, the City avers the Ordinance is lawful and proper in all respects.

101.    With respect to paragraph 198, the City denies the allegations.

102.    With respect to paragraph 199, the City admits the allegations.

103.    With respect to paragraphs 200 through 203, the City is without sufficient information to admit or deny the allegations and demands strict proof thereof.

104.    With respect to paragraph 204, the City avers Ms. Jones' landlord was not in compliance with the Ordinance.

105.    With respect to paragraph 205, the City is without sufficient information to admit or deny the allegations and demands strict proof thereof.

106.    With respect to paragraph 206, the City avers Ms. Jones and her family ultimately left the rental property located at 1101 Mitchell, and there have been no police calls to that location since their departure – the fact a black family lives there now and has been welcomed by the community, belies any allegation her family was subjected to any discrimination whatsoever.

107.    With respect to paragraphs 207 and 208, the City avers the Jones family, in fact, were problem tenants and involved in significant criminal and

nuisance activity, and the pervasive problems at 1101 Mitchell Drive was one of the reasons for the adoption of the Ordinance and the crime free housing program.

108.   With respect to paragraph 209, the City avers there is photographic evidence of problems with garbage, and further avers the surrounding neighbors will vividly describe the living nightmare they had to endure with the Jones family.

109.   With respect to paragraph 210, the City avers there was ongoing criminal activity perpetuated by the Jones family, and further avers no one should have to endure the despicable conduct of the Jones family.

110.   With respect to paragraph 211, the City is without sufficient information to admit or deny the allegations and demands strict proof thereof. The City avers it is not surprising a neighbor would want Ms. Jones to move in light of her family's utter disregard for common decency.

111.   With respect to paragraph 212, the City avers the Jones family were in fact problem tenants, as the excessive and pervasive police calls to 1101 Mitchell was one of the reasons for the enactment of the Crime Free Multi-Housing Program.

112.   With respect to paragraph 213, the City is without sufficient information to admit or deny the allegations and demands strict proof thereof.

113.    With respect to paragraphs 214 through 217, the City denies the allegations.

114.    With respect to paragraphs 218 through 223, the City is without sufficient information to admit or deny the allegations and demands strict proof thereof.

115.    With respect to paragraph 224, the City admits the allegations.

116.    With respect to paragraphs 225 and 226, the City is without sufficient information to admit or deny the allegations and demands strict proof thereof.

117.    With respect to paragraph 227, the City denies the allegations.

118.    With respect to paragraph 228, the City is without sufficient information to admit or deny the allegations and demands strict proof thereof.

119.    With respect to paragraph 229, the City denies the allegations.

120.    With respect to paragraphs 230 through 250, the City is without sufficient information to admit or deny the allegations and demands strict proof thereof.

121.    With respect to paragraph 251, the City denies the allegations.

122.    With respect to paragraphs 252 and 253, the City avers all citizens are subject to the City's laws.

123.   With respect to paragraphs 254 through 268, the City is without sufficient information to admit or deny the allegations and demands strict proof thereof.

124.   With respect to paragraphs 269 and 270, the City avers all citizens are subject to the City's laws.

125.   With respect to paragraphs 271 through 290, the City is without sufficient information to admit or deny the allegations and demands strict proof thereof.

126.   With respect to paragraphs 291 and 292, the City avers all citizens are subject to the City's laws.

127.   With respect to paragraphs 293 through 314, the City is without sufficient information to admit or deny the allegations and demands strict proof thereof.

128.   With respect to paragraphs 315 and 316, the City avers all citizens are subject to the City's laws.

129.   With respect to paragraphs 317 through 334, the City is without sufficient information to admit or deny the allegations and demands strict proof thereof.

130.   With respect to paragraph 335, the City admits SCRS is a non-profit organization providing certain services.

131.    With respect to paragraphs 336 through 348, the City is without sufficient information to admit or deny the allegations and demands strict proof thereof.

132.    With respect to paragraph 349, the City incorporates by reference the foregoing paragraphs.

133.    With respect to paragraph 350, the allegations set forth characterizations of the Equal Protection Clause, which speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the Equal Protection Clause.

134.    With respect to paragraphs 351 and 352, the City denies the allegations.

135.    With respect to paragraph 353, the City incorporates by reference the foregoing paragraphs.

136.    With respect to paragraph 354, the allegations set forth characterizations of the Fair Housing Act, which speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the Fair Housing Act.

137.    With respect to paragraphs 355 and 356, the City denies the allegations.

138.    With respect to paragraph 357, the City incorporates by reference the foregoing paragraphs.

139.    With respect to paragraphs 358 and 359, the allegations set forth characterizations of 42 U.S.C. § 1981, which speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of 42 U.S.C. § 1981.

140.    With respect to paragraphs 360 and 361, the City denies the allegations.

141.    With respect to paragraph 362, the City incorporates by reference the foregoing paragraphs.

142.    With respect to paragraphs 363 and 364, the allegations set forth characterizations of the Fair Housing Act, which speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the Fair Housing Act.

143.    With respect to paragraph 365, the City denies the allegations.

144.    With respect to paragraph 366, the City incorporates by reference the foregoing paragraphs.

145.    With respect to paragraphs 367 and 368, the allegations set forth characterizations of the Fair Housing Act, which speaks for itself and contains

the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the Fair Housing Act.

146.    With respect to paragraph 369, the City denies the allegations.

147.    With respect to paragraph 370, the City incorporates by reference the foregoing paragraphs.

148.    With respect to paragraph 371, the allegations set forth characterizations of the Minnesota Constitution, which speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the Minnesota Constitution.

149.    With respect to paragraphs 372 and 373, the City denies the allegations.

150.    With respect to paragraph 374, the City incorporates by reference the foregoing paragraphs.

151.    With respect to paragraph 375, the allegations set forth characterizations of the Minnesota Constitution, which speaks for itself and contains the best evidence of its contents. The City denies any allegation inconsistent with the plain language of the Minnesota Constitution.

152.    With respect to paragraphs 376 through 378, the City denies the allegations.

153.    With respect to the relief sought by the Plaintiffs on page 72 of the Amended Complaint, no answer is required; however, to the extent an answer is deemed required, the City denies Plaintiffs are entitled to any of the requested relief.

154.    The City joins in Plaintiffs' request for a jury trial.

## AFFIRMATIVE DEFENSES

155.    The City affirmatively alleges Plaintiffs' Amended Complaint fails to state a cause of action upon which relief may be granted.

156.    The City affirmatively alleges the City's enactment of the Ordinance was not arbitrary, capricious, or an abuse of discretion, and was lawful and proper in all respects.

157.    The City affirmatively alleges Plaintiffs have failed to state a cognizable claim for relief under 42 U.S.C. § 1983 and, further, deny Plaintiffs sustained any deprivation of rights or constitutional injuries as alleged in the Amended Complaint.

158.    The City affirmatively alleges the provisions of the Ordinance, challenged by Plaintiffs, are lawful, constitutional and proper in all respects.

159.    The City affirmatively alleges Plaintiffs' claims are barred, in whole or in part, by their lack of standing, including but not limited to, the absence of a justiciable or ripe dispute regarding the challenged provisions of the Ordinance.

160.   The City affirmatively alleges Plaintiffs' claims are barred, in whole or in part, by the overbreadth doctrine and void for vagueness doctrine.

161.   The City affirmatively alleges Plaintiffs' claims are barred by the applicable statute of limitations, the doctrine of laches, or are otherwise untimely.

162.   The City affirmatively alleges Plaintiffs' claims are barred, in whole or in part, by immunity.

163.   The City affirmatively alleges Plaintiffs have failed to set forth a proper *Monell* claim against the City and, further, denies the City has a custom, practice or policy that would be violative of any constitutional rights.

158.   The City affirmatively alleges Plaintiffs have "unclean hands" and are not entitled to any relief whatsoever.

**WHEREFORE,** the City prays Plaintiffs take nothing by their claim for relief and this claim be dismissed with costs, disbursements and other relief as the Court deems just and equitable.

IVERSON REUVERS CONDON

Dated: July 13, 2018                    By___s/ Paul D. Reuvers_____
                                          Paul D. Reuvers, #217700
                                          Jason J. Kuboushek, #0304037
                                          Andrew A. Wolf, #398589
                                        9321 Ensign Avenue South
                                        Bloomington, MN 55438
                                        (952) 548-7200
                                        paul@irc-law.com
                                        jasonk@irc-law.com
                                        andrew@irc-law.com

                                        *Attorneys for Defendant City of
                                        Faribault*