UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| THELMA JONES, PRIYIA LACEY, FAISA ABDI, ALI ALI, RUKIYA HUSSEIN, LUCIA PORRAS, DAVID TROTTER-FORD, AND SOMALI COMMUNITY RESETTLEMENT SERVICES, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> CITY OF FARIBAULT, <br><br> *Defendant*. | Case No. 18-CV-01643 (JRT/HB) <br><br> **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL** |

Plaintiffs Thelma Jones, Priyia Lacey, Faisa Abdi, Ali Ali, Rukiya Hussein, Lucia Porras, David Trotter-Ford, and Somali Community Resettlement Services, Inc. ("Plaintiffs") move under Fed. R. Civ. P. 37(a)(3)(iv) to compel Defendant, the City of Faribault ("Defendant" or "City"), to produce (1) documents the City has withheld on unsubstantiated claims of privilege and (2) occupancy registers for rental dwellings in the City of Faribault.

**I.    PRIVILEGE LOG**

    **A.    FACTUAL BACKGROUND**

On September 27, 2018, Plaintiffs served their First Set of Requests for Production on Defendant ("Requests").  Pursuant to the parties' Rule 26(f) report (ECF-16), privilege logs were not due until March 15, 2019.[1]

On March 15, Defendant produced a privilege log ("Log") showing it had withheld 214 responsive documents or portions thereof under alleged claims of attorney-client privilege.  Def.'s Privilege Log, Mar. 15, 2019, attached as Exhibit A.  The Log does not enumerate the entries or identify the Request to which the withheld document is responsive, and it is legally deficient in many ways.  The Log consists of eight columns labeled from left to right: "Record Type" (consisting solely of "Email Message", "Email Attachment", or "Correspondence"); "Date/Time"; "From"; "To"; "Other Recipients"; "Designation"; "Designation Notes"; and "Bates Label/Control Number."  Id.  The Log only identifies and the job title for City attorneys.  *See*, *e.g.*, *id.* at 1, row 1 ("noting in the "Designated Notes" column: "Confidential communication to City Attorney (Melissa J. Manderschied)").  In the "Designation Notes" column, Defendant proffers one of four legally dubious and conclusory statements: (1) "Confidential communication [from/to] City Attorney," *see*, *e.g.*, *id.* at 1, row 1; (2) "Privilege regarding confidential communications between attorney and client extends to intermediaries and agents through whom communications are made," *see, e.g.*, *id*. at 2, row 1; (3) "Thread contains confidential attorney-client privileged communications," *see*, *e.g*., *id*. at 14 row 1; or (4) "Attorney-Client Privilege applies to communications, which due to cumulative effect of

---

[1] All dates are 2019 unless noted.

log and already produced materials, would allow opposing party to discover the topic or contents of a privileged communication," *see*, *e.g.*, *id*. at 22 row 1.

Defendant provided no accompanying affidavit or other information to substantiate its claims.

Within four business days, on March 21, Plaintiffs wrote Defendant asking that it either revise its Log or produce the withheld documents because the Log entries, in every instance, contained insufficient information for Plaintiffs to assess the validity of Defendant's privilege designations.  To assist Defendant in its review, Plaintiffs identified specific information they needed to assess the validity of Defendant's privilege claims—date of document creation, name and job title of its author, job titles of all recipients, and document descriptions, including the subject matter and the purpose for which the document was created.  To show their request was legally justified, Plaintiffs cited the Advisory Committee Notes to Fed. R. Civ. P. 26 and three cases from this District of Minnesota explaining the need to provide specific information under Rule 26 and proscribing boilerplate descriptions.  Letter from Ortiz to Defendant's Counsel at 3 (Mar. 21, 2019), attached as Exhibit B.

Less than 24 hours later, on March 22, Plaintiffs received a letter from Defendant in which it announced that "In each instance the basis for the privilege designation is the document was created for the purpose of requesting, rendering, or conveying legal advice."  Letter from Kuboushek to Plaintiffs' Counsel (Mar. 22, 2019), attached as Exhibit C.  Defendant also said that Plaintiffs should read the "Date/Time" column to mean, in each instance, as the date the document was created, as opposed to, *e.g.*, when

3

the document was transmitted to recipients. The City added that the document authors were listed, in each instance, in the "To" field.[2] The City further announced that it would "neither revise the log nor produce the withheld documents but will revisit the designation of specific documents should Plaintiffs outline the alleged deficiencies with the requisite specificity." Defendant neither discussed the cases Plaintiffs cited in support of their request for more information nor cited a single case to support its position.

On March 27, the parties had a status conference with Magistrate Judge Bowbeer, during which they discussed the Log, among other issues raised by Plaintiffs. The Court set a deadline of April 11 for the parties to file any motions to compel on the issues discussed during the call (Defendant, for its part, raised no issues with Plaintiffs' discovery responses during the call).

Two days later, Plaintiffs, hoping to avoid litigation on this issue, wrote Defendant again elaborating on why they needed the information they sought to assess Defendant's privilege claims. This time Plaintiffs cited cases from across the country, including the District of Minnesota, in support of their request for more information about Defendant's claims. Plaintiffs also questioned whether Defendant even bothered to review its claims after receiving Plaintiffs' March 21 letter, noting how quickly Defendant concluded that all 214 documents were created for the purpose of soliciting or conveying legal advice. Plaintiffs also pointed out that Defendant, not Plaintiffs, had the burden of proof in connection with these claims. Finally, Plaintiffs asked that the parties confer on this and

---

[2] During the parties' March 27 conference with Magistrate Judge Bowbeer, Defendant clarified it meant the "From" field.

other issues. Letter from Ortiz to Defendant's Counsel at 3 (Mar. 29, 2019), attached as Exhibit D

On April 4, Plaintiffs received a letter from Defendant in which it changed positions and said it was now revising its privilege log. It provided no timetable by which the revised log would be complete and did not disclose what additional information it would provide in the new log. Letter from Reuvers to Plaintiffs' Counsel (April 4, 2019), attached as Exhibit E.

On April 5, the parties conferred over this and other issues. Plaintiffs asked when they could expect Defendant's revised log, noting the difficult position they were in given the Court's April 11 deadline. Defendant responded that it would "try" to have the Log complete before the deadline.

Having no assurances from Defendant that its revised log would either (a) be produced before they devoted the time and energy needed to bring this motion, or (b) include the information they requested to assess Defendant's claims, Plaintiffs ask that the Court find that Defendant has waived its claims and order Defendant to produce all 214 documents.

### B.    LEGAL STANDARD

The attorney-client privilege is meant to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981). "[T]he party who claims the benefit of the attorney-client privilege has the burden of establishing the right to invoke its protection." *Hollins v. Powell*, 773 F.2d

191, 196 (8th Cir. 1985) (citations omitted). Rule 26 of the Federal Rules of Civil Procedure provides that when a party withholds otherwise discoverable information by asserting that the information is privileged, that party must, in relevant part, "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that . . . will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(ii).

Where, as here, the Court has federal-question jurisdiction over the claim, federal common law governs questions of privilege. Fed. R. Evid. 501; *Burke v. Messerli & Kramer*, P.A., 2010 WL 2520615, at *3 (D. Minn. 2010). "[C]onfidential communications between an attorney and his client are absolutely privileged from disclosure against the will of the client." *Burke*, 2010 WL 2520615, at *3 (quoting *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 601 (8th Cir. 1977)).

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Id.* (citing *Meredith*, 572 F.2d at 601–02). "[T]he protection of the privilege extends only to communications and not to facts." *Upjohn Co.*, 449 U.S. at 395 (citation omitted). Further, "[w]hen communications involving corporations . . . are at issue, the attorney-

client privilege may be extended to communications with employees of the organization <u>only</u> if 'the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.'" *Nat'l Credit Union Admin. Bd. v. CUMIS Ins. Soc'y, Inc.*, No. 16-CV-139 (DWF/LIB), 2017 WL 4898500, at *5 (D. Minn. Sept. 28, 2017) (emphasis in original; citations omitted).

"The party asserting the attorney-client privilege . . . bears the burden to provide a factual basis for its assertions." *Triple Five of Minnesota, Inc. v. Simon*, 212 F.R.D. 523, 527–28 (D. Minn. 2002), *aff'd,* No. CIV.99-1894 PAM/JGL, 2002 WL 1303025 (D. Minn. June 6, 2002) (citing *Hollins v. Powell,* 773 F.2d 191, 196 (8th Cir.1985)). "This burden is met when the party produces 'a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit' from counsel." *Id*. (quoting *Rabushka ex rel. United States v. Crane Co.,* 122 F.3d 559, 565 (8th Cir. 1997)).

"Courts consistently have held that [a party asserting attorney-client privilege] is required to produce a . . . privilege log, and that the failure to produce a log of sufficient detail constitutes a waiver of the underlying privilege[.]'" *Nat'l Credit Union Admin. Bd.*, 2017 WL 4898500, at *7 (citation omitted); *see also Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn.,* LLC, No. 9-cv-3037 (SRN/LIB), 2011 WL 13135650 (D. Minn. March 3, 2011) (requiring party asserting privilege to file a sufficiently detailed privilege log that would allow the Court to assess its claims of privilege or the Court would deem the claims of privilege waived), *aff'd*, No. 09-CV-3037-SRN-LIB, 2011 WL 1486033 (D. Minn. Apr. 19, 2011).

### C. ANALYSIS

#### 1. *Defendant's Privilege Log is Facially Invalid.*

Defendant's Log from March 15 is facially invalid because it provides insufficient information to assess the validity of Defendant's privilege claims. As pointed out to Defendant in Plaintiffs' March 21 and 29 letters, Defendant failed to include the following basic information that would allow Plaintiffs to assess its privilege claims.

- *Name/job title of document author and all recipients*. This is needed to assess whether the author of the communication and all its recipients were in an attorney-client relationship. It is also important for evaluating whether the communication was for the purpose of seeking or obtaining legal advice, whether it was intended to be confidential, and whether the privilege was waived.

- *Creation date of document*. This is needed to assess whether the document was created during the temporal scope of the attorney-client relationship. Defendant claimed that the "Date/Time" field shows this information. As pointed out to the City, while that may be true for e-mails it is not necessarily true for an attachment to that email.

- *Subject and purpose of communication or document*. This is necessary to assess (a) whether the communication provided or solicited legal advice, as opposed to other kinds of advice or whether it covered other topics entirely; and (b) whether

the withheld document is a "communication" at all, which may not be the case (i) for an e-mail if the e-mail was forwarded without comment; and (ii) for e-mail attachments.

In addition, Defendant nowhere provides information establishing that individuals named on its Log who received allegedly confidential attorney-client communications had roles and duties within the City's structure requiring them to know the contents of those emails. The City, accordingly, has failed to meet its burden that emails to which these individuals were privy are protected by the attorney-client privilege. This is precisely the scenario faced by the Court in *Nat'l Credit Union Admin. Bd. v. CUMIS Ins. Soc'y, Inc* There, the plaintiff's log was similarly flawed—failing to give sufficient information about the individuals' roles within the plaintiff's organizational structure. The Court reasoned that without that information it could not determine whether those individuals needed to know the legal advice. The Court, accordingly, found the plaintiff had failed to satisfy its burden and granted the defendant's motion to compel, ordering the plaintiff to produce the withheld emails.

The information that Defendant did include is pure boilerplate. For each of its 214 "Designation Notes" entries, the City's description of the withheld document is limited to saying it is, or contains, a "confidential communication." This is a legal conclusion. Privilege logs are supposed to include the *factual bases* for such conclusions. *See Rabushka* 122 F.3d at 565 (finding that the party met "burden of providing a factual basis for asserting the privileges when it produced a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying

9

explanatory affidavit of its general counsel."); s*ee also N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011) ("When a party relies on a privilege log to assert these privileges, the log must 'as to each document ... set[ ] forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed.'") (citation omitted); *see United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) ("Calling the lawyer's advice 'legal' or 'business' advice does not help in reaching a conclusion; it is the conclusion.")

For these reasons, the City's Log is defective on its face. The Court should, therefore, reject the City's privilege claims and deem the privileges waived. *Burke*, 2010 WL 2520615 at *3 ("A blanket claim of privilege that does not specify what information is protected will not suffice."); *Great Lakes Gas Transmission Ltd. P'ship*, 2011 WL 13135650 (requiring party asserting privilege to file a sufficiently detailed privilege log that would allow Court to assess its claims or the Court would deem claims waived). S*ee also, e.g.*, *Petrovic v. City of Chi.*, No. 06-c-611, 2007 WL 2410336, *2 (N.D. Ill. Aug. 21, 2007) ("Generally, the result of an inadequate privilege log is disclosure.").

### 2. *Defendant's Revised Log Should Be Rejected And Its Claims Deemed Waived.*

The City, for its part, has changed course and now apparently agrees with Plaintiffs that its initial log was inadequate. As of April 4, it claims that it is revising its Log—though when that revision will be complete and what information it will include remains unclear. More to the point, Defendant's enlightened view came about only after

10

Plaintiffs allocated significant time and effort trying to persuade Defendant on points that are clearly established under the law and typical in litigation practice.

Because the City was unjustified in defending its Log and continues to delay in revising it, the Court should exercise its discretion and find the City has waived its privileges. *See Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 425–26 (D. Minn. 2012) (noting breadth of discretion courts have in finding objections based on privilege waived); *Great Lakes Gas Transmission Ltd. P'ship*, 2011 WL 13135650, at *10 (warning defendants if they failed to produce a privilege log in timely manner "the Court will deem their objections based on claims privilege waived."). *See also United States v. Philip Morris Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003) (explaining that waiver of privilege most suitable for cases of unjustified delay, inexcusable conduct, and bad faith); *Equal Employment Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) ("Continual failure to adhere to Rule 26's prescription may result in waiver of the privilege where a court finds that the failure results from unjustified delay, inexcusable conduct, or bad faith.").

To recap the operative facts, Plaintiffs have twice requested, in writing, that Defendant revise its Log to add specific information to help them assess Defendant's privilege claims. Such information included the document creation date, its author's name and job title, job titles of all document recipients, and descriptions of the documents. This requested information should not have surprised the City; it is information courts routinely require in privilege logs, as shown by the legal authorities

11

cited by Plaintiffs in their letters of March 21 and 29.[3] Nonetheless, Plaintiffs went further and explained why they needed the information to assess Defendant's privilege claims.

Despite the obvious need for this information, Defendant initially balked at revising its Log. It declared it would not revisit its Log and attempted to shift the burden of proof unto Plaintiffs, asserting, without legal support, that it would not move unless Plaintiffs "outline the alleged deficiencies with the requisite specificity." Only after Plaintiffs repeated themselves—identifying, again, the exact same deficiencies—did Defendant abandon its position and agree to revise its Log. The only difference between its initial and current position is that the discovery schedule has advanced further, with the parties now scheduling depositions for April and May.

Moreover, despite Defendant's apparent change in position, to date it has still declined to produce a revised log. During the parties' conference on April 5, Plaintiffs specifically asked when they could expect the revised log given the upcoming motion deadline. Defendant declined to commit to a date, saying only it would "try" to produce the log before April 11. The Court should not tolerate this pattern of behavior—balking at revising its defective Log, for weeks, and now, only after Plaintiffs spent additional time pointing out those obvious defects, agreeing its initial position was unjustified, yet

---

[3] See Letter from Ortiz to Defendant's Counsel at 2 (Mar. 21, 2019); Letter from Ortiz to Defendant's Counsel at 2 (Mar. 29, 2019). *See also Meade v. Gen. Motors, LLC*, 250 F. Supp. 3d 1387, 1396 (N.D. Ga. 2017) (directing Defendant to revise its log to include the titles of email file-attachments, subject matter lines, and a brief non-privileged summary of the content of the document).

despite the pending motion deadline and forthcoming depositions, declining to say when its new position will yield an actual new log.[4]

Plaintiffs expect Defendant's next move will be to produce its log in response to this motion and ask the Court to ignore Defendant's unjustified initial position and its unreasonable delay in acting on its current position. Plaintiffs have been prejudiced by having to allocate resources to addressing these deficiencies, repeatedly, and in bringing this motion. They ask, therefore, that the Court deem Defendant's privilege claims waived and order Defendants to produce the documents it continues to withhold.

## II. OCCUPANCY REGISTERS

### A. FACTUAL BACKGROUND

In their Second Set of Requests for Production, served on February 15, Plaintiffs requested "Copies of all occupancy registers maintained by Licensees under the Ordinance, since its effective date of January 1, 2015. *See* Ord. No. 2014-009, § 7-41 and Ord. No. 2017-13, § 7-40(g)."[5]

---

[4] This pattern is also illustrated in the City's treatment of Plaintiffs' complaints that the City had not searched the email accounts of numerous former City officials. Only on April 4, months after Plaintiffs first brought this issue to Defendant, did the City finally explain that their investigation has confirmed that these emails were permanently deleted.
*(g) Occupancy register required.* Every licensee shall keep or cause to be kept a current register of occupancy for each dwelling unit that provides the following information:
  (1) Dwelling unit address.
  (2) Number of bedrooms in dwelling unit and the maximum number of occupants.
  (3) Legal names and date of birth of adult occupants and number of persons under eighteen (18) years of age currently occupying the dwelling units .
  (4) Dates renters occupied and vacated dwelling units.
  (5) A chronological list of complaints and requests for repair by dwelling unit occupants related to this article and all corrections made in response to such requests and complaints.

Defendant responded to Plaintiffs' request on March 18, as follows:

RESPONSE: Defendant City of Faribault has not identified any documents responsive to this request within its possession, custody or control following a reasonable search.

To the extent this request contemplates production of documents that are not within the possession, custody, or control of Defendant City of Faribault, Defendant objects to the request as beyond the permissible scope of the rules governing discovery in that it is not proportional to the needs of the case considering the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

This response is inadequate because the registers *are* within the City's control, as the City now admits; because the registers are relevant to Plaintiffs' case; and producing the registers is, contrary to the City's conclusory objection, proportional to the needs of the case.

B.     **LEGAL STANDARD**

Rule 26 of the Federal Rules of Civil Procedure governs the scope of discovery:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

---

Such a register shall be made available for viewing or copying by the City of Faribault at all reasonable times. (ECF 9-1 at 6.)

"Relevancy encompasses 'any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in this case.'" *Klein v. Affiliated Grp., Inc.*, No. 18-CV-949 DWF/ECW, 2019 WL 1307884, at *2 (D. Minn. Mar. 22, 2019) (quoting *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978)).

Parties are required to produce documents within their possession, custody, or control. Fed. R. Civ. P. 34(a)(1). In the Eighth Circuit, documents are within a party's control if the party has the legal right or practical ability to obtain them. *In re Hallmark Capital Corp.*, 534 F. Supp. 2d 981 (D. Minn. 2008) ("'[C]ontrol' [under Rule 34] does not require that the party have legal ownership or actual physical possession of the documents at issue; rather documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action."); *see also MasterMine Software, Inc. v. Microsoft Corp.*, No. 13-CV-971 (PJS/TNL), 2014 WL 12600147, at *8 (D. Minn. Nov. 10, 2014) (applying same liberal standard of "control"); *Damgaard v. Avera Health*, No. CV 13-2192 (RHK/JSM), 2014 WL 12599853, at *2 (D. Minn. June 9, 2014) ("Courts in this jurisdiction and other jurisdictions subscribe to the proposition that control not only encompasses actual physical possession of the documents, but also the legal right or practical ability to demand the documents from a third party.").

### C. ANALYSIS

The City, despite its initial position, now admits the registers are within its control. This fact is obvious from the plain language of the Ordinance, which gives the City authority to demand that Licensees make the registers available for viewing or copying.

The City now seeks refuge in a still unsubstantiated claim that producing these registers is more trouble than their worth, i.e., that the benefit to Plaintiffs is outweighed by the burden the City faces in producing it.

Plaintiffs disagree. These registers are relevant to show that the challenged occupancy restriction has a disparate impact on Somali families. (ECF-9, ¶¶ 366–69.) For every rental dwelling in Faribault, the registers will show the number of bedrooms, the number of occupants, and the names of adult occupants. Applying the Ordinance's occupancy restriction formula (2 occupants per bedroom plus 1)[6] to this information will show, in turn, which occupants are in violation of the Ordinance's occupancy restriction. For those occupants violating the Ordinance, the national origin of the Somali occupants can be determined by reference to their surnames. *See, e.g.*, *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977) (approving the government's use of Spanish surnames as proof of national origin).

Defendant also claims that this request is not proportional to the needs of the case but has declined, despite Plaintiffs' invitation, to substantiate that position with any evidence that the request is overly burdensome or with any argument as to why the registers are beyond the scope of this action.

That said, Plaintiffs are mindful of placing too great a burden on Defendant. For that reason, Plaintiffs have twice offered ways to alleviate any burden. In their March 29 letter, Plaintiffs offered to assist in drafting any letter the City may send to Licensees to obtain these registers and offered to help photocopy the registers. In addition, during the

---

[6] (ECF-9, ¶ 132; ECF 9-1, at 6.)

parties' conference on April 5 Plaintiffs brainstormed other ways to alleviate whatever burden this request may impose on Defendant. They said they would be willing to narrow their request to a representative sample of the overall number of dwellings. To do so, however, they would need additional information from Defendant. For example, Plaintiffs asked the City how many Licensee email addresses it has, suggesting a less burdensome way to communicate than U.S. mail. Defendant acknowledged it has some email addresses but could not say how many. Plaintiffs also considered whether Licensees owning a large number of rental dwellings could be prioritized, whereas those with one or two properties could be ignored. The idea was to capture as many dwellings as possible with the least amount of effort. The City committed to no position, though it acknowledged that certain licensees do own large numbers of dwellings.

To conclude, if the Court credits the City's evidentiary proffer, which Plaintiffs have yet to see, that the burden of producing these registers is too great, Plaintiffs again renew their interest in obtaining a representative sample of these occupancy registers. However, to ensure that sample is indeed representative, Plaintiffs would want to be involved in deciding which Licensees to pursue. This step, however, should be contingent on a showing by Defendant that Plaintiffs' request for this uniquely probative evidence is outweighed by whatever burden Defendant faces in producing it.

### III.   CONCLUSON

For these reasons, Plaintiffs ask that the Court grant their motion to compel and order Defendant to produce (1) the 214 documents listed on its Log and (2) copies of all occupancy registers maintained by Licensees under the Ordinance, since its effective date

of January 1, 2015, or, after consulting with Plaintiffs, a representative sample thereof. Finally, Plaintiffs ask that they be awarded costs and reasonable attorneys' fees incurred for bringing this motion.

Date: April 10, 2019

                Respectfully,

                */S/ Alejandro A. Ortiz*
                Alejandro Ortiz *(Admitted Pro Hac Vice)*
                Joshua Riegel *(Admitted Pro Hac Vice)*
                American Civil Liberties Union Foundation
                125 Broad St., 18th Floor
                New York, NY 10004
                Tel: 212-549-2500
                ortiza@aclu.org
                jriegel@aclu.org

                Teresa Nelson
                Ian Bratlie
                American Civil Liberties Union of Minnesota
                P.O. Box 14720
                Minneapolis, MN 55414
                Tel: 651-529-1692
                tnelson@aclu-mn.org
                ibratlie@aclu-mn.org

                *Attorneys for Plaintiffs*