# EXHIBIT D




National Office
125 Broad Street, 18th Floor
New York, NY 10004

(212) 549-2500
aclu.org




P. O. Box 14720
Minneapolis, MN 55424
651.645.4097
ACLU-MN.ORG

March 29, 2019

**<u>VIA E-MAIL</u>**

Paul Reuvers
Andrew A. Wolf
Jason Kuboushek
Iverson Reuvers Condon
9321 Ensign Avenue South
Bloomington, MN 55438

**Re: *Jones et al. v. City of Faribault*, Civ. No. 18-cv-1643**

Dear Counsel:

I write regarding three issues discussed during the March 27 telephonic status conference with Magistrate Judge Bowbeer. They include Defendant's refusals to (1) search for and produce relevant and responsive documents from former city officials' e-mails accounts; (2) revise its privilege log; and (3) provide the occupancy registers for licensees.

We ask that Defendant respond to our below requests by Thursday, April 4, and that the parties meet and confer on these issues on or before Friday, April 5. If the parties cannot resolve these issues before April 11, Plaintiffs will move to compel.

**1. Former City Official E-mail Accounts**

First, Plaintiffs request that Defendant produce relevant and responsive documents from the files and e-mail accounts of the following former city officials: Mayor John J. Jasinski, City Administrator Brian J. Anderson, City Council members David Albers, Joan VanDyke, and Ken Walls, and Building Inspector Dave Mathews.

To be sure, Plaintiffs identified all but one of these former officials as necessary custodians in November 2018[1] and have repeatedly asked Defendant to explain why it has not produced relevant and responsive documents from them. Despite those requests,[2] Defendant has declined to provide any detail—saying only that it conducted "a reasonable search"[3] and

[1] *See* Plaintiffs' letter to Defendant dated November 20, 2018.

[2] *See* Plaintiffs' letters to Defendant dated February 15, February 25, March 3, and March 15, 2019.

[3] Defendant's letter to Plaintiffs dated February 21, 2019.

that its ESI consultant said the e-mail accounts ***may*** not be recoverable.[4] To date, however, Defendant has ignored Plaintiffs' repeated suggestion that Defendant contact Microsoft about these accounts.

Documents that are within your "control" must be produced. Under Eighth Circuit case law, documents are within your control if you have the legal right or practical ability to obtain them.[5] For that reason, we ask, again, that you contact Microsoft to determine if the e-mails from these accounts are retrievable and, if so, at what cost. We also ask that Defendant provide Plaintiffs with a written response, accompanied by an affidavit, describing and attesting to the search efforts Defendant has undertaken with respect to these former officials. As Judge Bowbeer said during the status conference, Defendant should provide an affidavit demonstrating (1) its reasonably diligent search efforts in response to a motion to compel, and (2) should any records exist, the particular reasons why their retrieval would be unduly burdensome. Any explanation Defendant would provide in defending against compelled production is equally as appropriate at this juncture and could obviate the need for such a motion. We ask that the affidavit also include Defendant's efforts to search the mayor's e-mail account[6] (which, unlike the other, officer-specific e-mail accounts, remains active) for the former mayor's e-mails and its efforts to determine whether the former mayor used an individualized e-mail account, a question Plaintiffs have raised before[7] but which Defendant continues to ignore.

---

[4] Defendant's position on the recoverability of these accounts has been a moving target. In your March 14 letter, you said the ESI consultant said that "formerly existing accounts" could not be "reactivated" even though a backup of this information may exist. In your March 22 letter, the ESI consultant was described as saying only that the e-mails could not be "recovered," ignoring the possibility of a backup. At the conference with Judge Bowbeer, you again changed positions, saying that the accounts had been "deactivated" and that the ESI consultant said the e-mails had "likely" been deleted.

[5] *In re Hallmark Capital Corp*., 534 F. Supp. 2d 981 (D. Minn. 2008) ("'[C]ontrol' [under Rule 34] does not require that the party have legal ownership or actual physical possession of the documents at issue; rather documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action."); *see also MasterMine Software, Inc. v. Microsoft Corp.*, No. 13-CV-971 (PJS/TNL), 2014 WL 12600147, at *8 (D. Minn. Nov. 10, 2014) (applying same liberal standard of "control"); *Damgaard v. Avera Health*, No. CV 13-2192 (RHK/JSM), 2014 WL 12599853, at *2 (D. Minn. June 9, 2014) ("Courts in this jurisdiction and other jurisdictions subscribe to the proposition that control not only encompasses actual physical possession of the documents, but also the legal right or practical ability to demand the documents from a third party.").

[6] mayor@ci.faribault.mn.us.

[7] *See* Plaintiffs' March 15, 2019 letter to Defendant.

**2. Inadequate Privilege Log**

Second, Plaintiffs ask, again, that you either update your privilege log or withdraw all 214 privilege claims[8] and produce the withheld documents.

As is stated in our March 21, 2019 letter, the bases for your privilege claims are deficient. Because you have the burden of establishing each privilege claim,[9] Plaintiffs request that you provide the following information:

- *Numbering.* At a minimum, we ask that Defendant reproduce the privilege log with a column that identifies each assertion of privilege by number, in sequential order.

- *Name/job title of document author and all recipients*. This is needed to assess whether the author of the communication and all its recipients were in an attorney-client relationship.[10] It is also important for evaluating whether the communication was for the purpose of seeking or obtaining legal advice; whether it was intended to be confidential; and whether the privilege was waived.[11]

- *Creation date of document*. This is needed to assess whether the document was created during the temporal scope of the attorney-client relationship. You said that the "Date/Time" field answers that question. That may be the case for e-mails but not necessarily an attachment

---

[8] None of which Defendant enumerated in its log, making an individualized discussion of them all the more onerous.

[9] *Lumber v. PPG Indus., Inc.*, 168 F.R.D. 641, 644 (D. Minn. 1996) ([T]he party asserting the privilege must demonstrate that each of these elements have been satisfied.").

[10] *See e.g., SEC v. Yorkville Advisors*, LLC, 300 F.R.D. 152, 163–64 (S.D.N.Y 2014); *Go v. Rockefeller University*, 280 F.R.D. 165, 175 (S.D.N.Y 2012).

[11] *See e.g., In re Air Crash Disaster at Sioux City, Iowa*, 133 F.R.D. 515, 521–22 (N. D. Ill. 1990); *RBS Citizens, NA. v. Husain*, 291 F.R.D. 209, 218-19 (N.D. Ill. 2013).

transmitted by the e-mail.[12]

- *Subject and purpose of communication or document*.[13] This is necessary to assess (a) whether the communication provided or solicited legal advice,[14] as opposed to other kinds of advice or whether it covered other topics entirely; and (b) whether the withheld document is a "communication" at all, which may not be the case (i) for an e-mail if the e-mail was forwarded without comment; and (ii) for e-mail attachments.

In addition, there are many entries throughout the log where no attorney is listed in either the "From" or "To" fields. Those documents are, by definition, not attorney-client communications and should be produced.[15] *See e.g.*, page 16, rows 2-5. It is also not clear whether all individuals listed in such entries fall within the scope of the "client" or whether sharing the communication with that individual effectively waived the privilege.[16]

---

[12] Attachments, in particular, warrant additional scrutiny. As you know, transmittal of a document to an attorney for review does not by itself render the document privileged. *P & B Marina, Ltd. Partnership v. Logrande*, 136 F.R.D. 50, 56 (E.D.N.Y. 1991) ("Merely attaching such documents to attorney-client communications does not constitute a basis for assigning the privilege"); *Pacamor Bearings v. Minebea Co.*, Ltd., 918 F. Supp. 491, 511 (D.N.H. 1996) ("Attachments which do not, by their content, fall within the realm of the privilege cannot become privileged by merely attaching them to a communication with the attorney"); *Draus v. Healthtrust, Inc.*, 172 F.R.D. 384, 393 (S.D. Ind. 1997) ("The cover letter is protected by the attorney-client privilege. The attached agreement is not.").

[13] *See Heartland Bank v. Heartland Home Finance, Inc.*, 335 F.3d 810, 816 (8th Cir. 2003) ("[T]he purpose of this summary is . . . to reflect what the documents say and to do so accurately.").

[14] In your March 22 letter, which we received less than 24 hours after our first letter requesting this information, you asserted, without evidence, that all 214 documents were created for the purpose of soliciting or providing legal advice. Given the speed at which that response was delivered, Plaintiffs question whether Defendant took the time to review each of the 214 documents to ensure that accuracy of that statement, especially given that no such information is disclosed in the privilege log.

[15] *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981), 449 U.S. at 395–96 (reasoning that the attorney-client privilege protects only the disclosure of communications from client to attorney, not the disclosure of the underlying facts by those persons who communicated with the attorney)

[16] *See Krueger v. Ameriprise Fin., Inc., LLC*, No. CV 11-2781 (SRN/JSM), 2014 WL 12597432, at *10 (D. Minn. May 7, 2014) ("[T]he attorney-client privilege is applicable if the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents." (quotation omitted)).

Given these deficiencies, we ask that, in responding to this letter, and consistent with binding precedent, you provide an affidavit supporting your privilege claims.[17]

**3. Occupancy Registers**

Third and finally, Plaintiffs again ask that Defendant produce copies of all occupancy registers maintained by Licensees.

There is no question the registers are within Defendant's control.[18] The City has the legal authority and practical ability to demand that Licensees make the registers available for inspection and copying. This step, however, may not even be necessary; it assumes the City does not already have copies of some, if not all, of these registers. It is entirely possible the City has previously obtained copies of these registers to, among other reasons, enforce the ordinance's occupancy restriction. Please ask your client for clarity on this if you have not already done so.

In addition, Defendant's objection that producing these registers is disproportional to the needs of case because of the burden is not persuasive. Just because there are 350 Licensees does not make the request burdensome. Does the City have e-mail addresses for the Licenses? If so, a simple e-mail will go a long way toward satisfying Plaintiffs' request. In addition, if mailing is necessary, Plaintiffs hereby offer their services to assist in drafting the letter to Licensees and in preparing the mailing. We will also help with photocopying, if needed. Given these offers, Defendant cannot credibly claim that it cannot fulfill this discovery request.

---

[17] *Rabushka ex rel. U.S. v. Crane Co.*, 122 F.3d 559, 565 (8th Cir. 1997) (finding that burden of supporting a finding of privilege is met when the party asserting the privilege submits an explanatory affidavit from counsel setting forth facts under oath establishing that the communication met the requirements for a privileged communication); *see also* T*riple Five of Minnesota, Inc. v. Simon*, 212 F.R.D. 523, 527–28 (D. Minn. 2002), *aff'd*, No. CIV.99-1894 PAM/JGL, 2002 WL 1303025 (D. Minn. June 6, 2002) (finding Defendants met burden of establishing attorney-client privilege upon provision of a sworn affidavit); *Damgaard v. Avera Health*, No. CV 13-2192 (RHK/JSM), 2014 WL 12599853, at *5 (D. Minn. June 9, 2014).

[18] *See supra* note **Error! Bookmark not defined.**.

As stated above, please respond to this letter by April 4 and make time to confer with us on or before April 5.

Sincerely,

*/s/ Alejandro Ortiz*

Alejandro Ortiz*
Racial Justice Program
American Civil Liberties Union
(646) 885-8332
ortiza@aclu.org
*admitted *pro hac vice*