IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| THELMA JONES, PRIYIA LACEY, FAISA ABDI, ALI ALI, RUKIYA HUSSEIN, LUCIA PORRAS, DAVID TROTTER-FORD, AND SOMALI COMMUNITY RESETTLEMENT SERVICES, INC., <br><br>                 Plaintiffs, <br><br>v. <br><br>CITY OF FARIBAULT, <br>                 Defendant. | Case: 18-cv-1643 (JRT/HB) |

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

**INTRODUCTION**

On April 5, the parties conferred over their potential motions to compel discovery. Prior to the meet and confer the City of Faribault ("the City") had agreed to address one issue Plaintiffs indicated may serve as the basis for a motion to compel. The City agreed it would revise the Privilege Log it produced to Plaintiffs on March 15. During the meet and confer both parties indicated they would try to provide the other party with the discovery materials weighing on their potential motions prior to the April 11 deadline to file a motion to compel consistent with the scheduled April 25 hearing. Unlike Plaintiffs, the City

produced its revised Privilege Log on April 10, prior to the April 11 deadline as promised. (Declaration of Andrew A. Wolf, April 17, 2019, Exhibit 1: The City's Supplemental Privilege Log, April 10, 2019).

On April 15, at 6:53 PM, counsel for Plaintiffs e-mailed the City a letter alleging the City's revised privilege log was deficient. (Wolf Decl. Ex. 2: Plaintiffs' letter, April 15, 2019). This letter raises new claims and contains arguments which are not properly before the Court.

## **ARGUMENT**

**THE CITY'S PRIVILEGE LOG SATISFIES THE REQUIREMENTS OF THE FEDERAL RULES OF CIVIL PROCEDURE.**

Under Fed. R. Civ. P. 26(b)(5)(A) when a party withholds information otherwise discoverable by claiming the information is privileged, the party must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A) does not define the information which should be provided but the Advisory Committee Notes state: "Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories." Fed. R. Civ. P. 26(b)(5) Advisory Committee Note to the 1993

amendments. While "the 1993 Advisory Committee Notes recognized the specific information provided in asserting the privilege may vary depending on the volume of the materials involved,"[1] the City's Supplemental Privilege Log provides all the information necessary to assess the adequacy of the privilege claims, consistent with the Federal Rules of Civil Procedure:

    A.    **"Details concerning time"** – For every document which the City has designated as privileged, the City has provided Plaintiffs with the date and time of the document.[2]

---

[1] The Sedona Conference Commentary on Protection of Privileged ESI, 17 SEDONA CONF. J. at 156 (2016).

[2] The City has evaluated what information would be most helpful to assessing the privilege claims, and included such information in its privilege log. Should Plaintiffs demand other date/time information be provided, the City will accommodate that request. But, Plaintiffs have not been clear or consistent in this regard. For example, Plaintiffs concede the date and time associated with e-mail messages is sufficient for disclosure of the "Creation date of document." While this would be consistent with common understanding, from a technical standpoint it is incorrect. The date and time reflected in an e-mail is the date and time the e-mail was either sent or received. A separate metadata field exists for when a message is created that is not necessarily identical to the Sent/Received date. Likewise, the "Creation date" for an e-mail attachment is the date that a change occurred to the file's location on a given file system. It does not reflect the date new data was added to a file. This information is reflected in the "Last Modified Date." Because the date new data was added to a file is more relevant to assessing a claim of privilege where a document is passed between employees and attorneys, the City has included the "Last Modified Date" for e-mail attachments.

B. **"Details concerning . . . persons"**- The City's initial privilege log identified the author, recipient, and other recipients for every document claimed privileged. Plaintiffs claimed the City was required to identify every individual's title, even though most of this information was contained in the City's Initial Disclosures and Amended Initial Disclosures. Nevertheless, the City provided this information in its supplemental privilege log. Plaintiffs have now asserted new alleged deficiencies, claiming the City was required to identify the job title of each individual at the time they sent or received a confidential attorney-client privileged communication.[3] No such requirement is required under the Federal Rules.

Given the lack of guidance in the Federal Rules regarding what information should be included within a privilege log, the City has endeavored to provide Plaintiffs with the information they claim to need in order to assess the privilege claims. Plaintiffs first suggested this information was needed shortly before a Response to their motion was due. Plaintiffs' attempt to move the goal post in the eleventh hour has prevented the City from accommodating

---

[3] One example Plaintiffs rely upon is Entries No. 56 and 57. These entries indicate current City Administrator Tim Murray was cc'ed on the e-mails, even though the City's discovery responses indicate former City Administrator Brian Anderson was the City Administrator at the time the e-mails were sent. Both of these disclosures are true. The reason Mr. Murray was cc'ed on the e-mail is because he was the City Engineer at the time and was going to be participating in the meeting with the City Attorney to discuss privilege information.

this new demand. The City, however, is willing to revise its privilege log to identify the individual titles, for those individuals whose job title has changed even though it does not change the fact the privilege applies to all of the documents set forth in the City's privilege logs.

        C.    **"Details concerning . . . general subject matter"**- The City's supplemental privilege log identifies the privilege claimed. For each document reflected on the privilege log the City has designated the document as subject to the attorney-client privilege. The City's supplemental privilege log provides the basis for the claim, noting whether the communication was made for the primary purpose of soliciting, rendering, or facilitating legal advice. Furthermore, the City's supplemental privilege log describes the general subject matter on which the legal advice was requested, rendered, or facilitated. As suggested by the Court, the City's supplemental privilege log provides Plaintiffs with the information contained within the subject line of e-mail communications, and the title of e-mail attachments, except in a handful of situations where the subject or title would reveal the content of the privileged communication. In those instances, the City has provided Plaintiffs with a general description allowing them to assess the privilege claim.

    Plaintiffs claim this information is insufficient to allow it to assess the adequacy of the claim because "the City nowhere provides information

establishing that individuals named on its Log who received allegedly confidential attorney-client communications had roles and duties within the City's structure requiring them to know the contents of those emails." *Pls' Mem. at 9.* Plaintiffs assert "this is not a problem for obviously high-level individuals" but "[i]t is a problem, however, for lower level police officers and other City employees outside the top echelons of City government." *Pls' Ltr. at 5.* Plaintiffs wrongly focus on whether an individual belongs to "the top echelons of City government" or is considered a "lower level" employee.

The Eighth Circuit has expressly rejected this analysis for determining whether a communication is privileged:

> In a corporation, it may be necessary to glean information relevant to a legal problem from middle management and nonmanagement personnel as well as from top executives. The attorney dealing with a complex legal problem is thus faced with a 'Hobson's choice'. If he interviews employees not having the very highest authority, their communications to him will not be privileged. If, on the other hand, he interviews only those with the very highest authority, he may find it extremely difficult, if not impossible, to determine what happened. Thus, the control group test inhibits the free flow of information to a legal advisor and defeats the purpose of the attorney-client privilege. . . .
>
> The Harper & Row test provides a more reasoned approach to the problem by focusing upon why an attorney was consulted, rather than with whom the attorney communicated.

*Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 608–09 (8th Cir. 1977). By providing the subject of the e-mail communication or the title of the e-mail

attachment, the City has given Plaintiffs a general description of why the attorney was contacted. Because the applicability of the privilege is dependent on why the attorney was contacted, not by whom, the City has provided Plaintiffs with all the information necessary to judge the adequacy of the claim.

Courts applying the *Diversified Indus., Inc. v. Meredith* analysis to local government entities have "emphasize[d] that as a municipality, the City may only act through its employees, and therefore these communications are ordinarily protected by the attorney-client privilege." *Criswell v. City of O'Fallon, Mo.*, 2008 WL 250199, at *3 (E.D. Mo. Jan. 29, 2008). To the extent the City is required to identify specific facts which would establish why a specific individual would be privy to communications with the City's attorneys, the City has already done so. It is evident from the description provided in the log a substantial number of these communications concerned the drafting,[4]

---

[4] It is undisputed drafting of documents is protected by the Attorney-Client Privilege. *See In re Mentor Corp. ObTape Transobturator Sling Prods. Liab.*, 632 F. Supp.2d 1370, 1382 (M.D. Ga. 2009) (*quoting Muller v. Walt Disney Prods.*, 871 F. Supp. 678, 682 (S.D.N.Y. 1994), *citing Schenet v. Anderson*, 678 F. Supp. 1280, 1284 (E.D. Mich. 1988)) (finding " '[p]reliminary drafts of contracts are generally protected by attorney-client privilege, since [p]reliminary drafts may reflect not only client confidences, but also the legal advice and opinions of attorneys, all of which is protected by the attorney-client privilege.' "); *see also Andritz Sprout–Bauer, Inc. v. Beazer E., Inc.*, 174 F.R.D. 609, 633 (M.D. Pa. 1997) ("Drafts of documents prepared by counsel or circulated to counsel for comments on legal issues are considered privileged if they were prepared or circulated for the purpose of giving or obtaining legal advice and contain information or

introduction, discussion, passage, or revision of the Rental Licensing Ordinance at issue in this lawsuit. Ignoring the fact the City has already identified these individuals as being involved in the drafting, introduction, discussion, passage, or revision of the Rental Licensing Ordinance during discovery, the supplemental privilege log itself discloses these facts, as evident from Plaintiffs' review of the log. *See Pls' Ltr. at 3* ("Other than that description, Plaintiffs know only that a non-attorney (Kuennen) sent the revisions to the City's attorneys (Riggs and Alsop) and that the City thinks those revisions are privileged.").

Despite conceding they are able to determine the matter for which the City's attorneys were contacted, Plaintiffs argue the City is required to disclose the actual substance of the requested advice or facts which prove the City employees were not using the City Attorneys simply as a sounding board for non-legal guidance. *See Pls' Ltr. at 3*. But, "a matter committed to a professional legal adviser *is prima facie so committed for the sake of the legal advice* which may be more or less desirable for some aspect of the matter, and is therefore within the privilege unless it clearly appears to be lacking in aspects requiring legal advice." 8 John Henry Wigmore, Evidence § 2296, at 567. (McNaughton rev. 1961). Likewise, courts in this District have held a defendant is not required to specifically state in a privilege log whether or not withheld documents touched

---

comments not included in the final version.") (citations omitted); *Upsher–Smith Labs., Inc. v. Mylan Labs., Inc.*, 944 F.Supp. 1411, 1445 (D. Minn. 1996) (same).

upon specific issues. *See Bartholomew v. Avalon Capital Grp., Inc.*, 278 F.R.D. 441, 447 (D. Minn. 2011) (finding "Contrary to Plaintiffs' contentions, the City's privilege log is not boilerplate or uninformative. The City's privilege log satisfies the requirements of Fed. R. Civ. P. 26(b)(5)" where the privilege log at issue "contains the following categories: Author/Source, Recipient(s), CC(s), Date, Description, Privilege Asserted, and Beginning of Bates Number of Produced Version.").

The City's privilege log provides Plaintiffs with all the information needed to assess the validity of the claim, and as such meets the requirements of the Federal Rules of Civil Procedure. Plaintiffs' attempt to seek disclosure of all the withheld documents listed on the privilege log must fail considering the City's compliance with the Federal Rules. But, "even if a privilege log provides insufficient information, it is not clear that the appropriate remedy is to find that a waiver occurred." *Progressive Cas. Ins. Co. v. F.D.I.C.*, 298 F.R.D. 417, 421 (N.D. Iowa 2014) (collecting cases and reasoning "[f]inding a waiver, and thus directing a party to produce privileged information, is a harsh result.").[5] This is especially true where, as here, the City has agreed to address any deficiencies in its privilege log, even those which were first raised after the parties' meet and

---

[5] The cases cited by Plaintiffs involve cases where no privilege log exists. In this case, multiple privilege logs exist -- Plaintiffs just do not like them. This position, however, does not justify granting a waiver of the privilege.

9

confer and following the initial briefing on the current motion.[6] Because the City has complied with the Federal Rules of Civil Procedure and attempted to cooperate with Plaintiffs' shifting demands, the Court should deny Plaintiffs' motion to compel disclosure of the every document listed on the City's privilege log.

**PLAINTIFFS' REQUEST FOR OCCUPANCY REGISTERS IS BEYOND THE SCOPE OF DISCOVERY.**

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery. Information falls within the scope of discovery under Rule 26(b)(1) if two elements are satisfied. The Rule states "[p]arties may obtain discovery regarding any nonprivileged matter" if the information is **both** (1) "relevant to any party's claim or defense" **and** (2) "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The burden for making the required threshold showing of relevance and proportionality is on "the party seeking discovery." *Haddley v. Next Chapter Tech., Inc.*, No. 16-CV-1960 (DWF/LIB), 2018 WL 2180253, at *3 (D. Minn. Mar. 23, 2018)

---

[6] *See Progressive Cas. Ins. Co. v. F.D.I.C.*, 298 F.R.D. 417, 421 (N.D. Iowa 2014) ("The Rules of Procedure are so deferential to the laudatory purpose of protecting recognized privileges that a party may actually recall inadvertently-produced privileged materials and, in effect, pretend that they had not been produced. If a party may maintain its claim of privilege even after actually producing privileged information to its opponent, I am not going to find waiver simply because I find that the party did not provide quite enough information in a privilege log. That is particularly true where, as here, there is no indication that the party acted in bad faith.").

(citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). Plaintiffs have failed to meet their burden of making this threshold showing.

While Rule 26 is liberal in scope and interpretation, "the scope of discovery is intended to focus on the actual claims or defenses that are at issue in the litigation." *Haddley*, 2018 WL 2180253, at *3. Plaintiffs claim their request for occupancy registers is relevant to their claim the Rental Housing Ordinance has had a disparate impact on Somali families in the City of Faribault. Assuming all Licensees within the City are in compliance with the Rental Housing Ordinance's occupancy register requirement and some or any of these occupancy registers actually exist, no information can be gleaned from these registers which would be relevant to Plaintiffs' claims. Information regarding a tenant's race and/or national origin is absent from the list of information required to be maintained in the Licensee's occupancy registers.[7] While the occupancy registers do not contain

---

[7] *See* FARIBAULT, MINN. CITY CODE, Sec. 7-40(g). ("Every licensee shall keep, or cause to be kept, a current register of occupancy for each dwelling unit that provides the following information:
    (1) Dwelling unit address.
    (2) Number of bedrooms in dwelling unit and the maximum number of occupants.
    (3) Legal names and date of birth of adult occupants and number of persons under eighteen (18) years of age currently occupying the dwelling units.
    (4) Dates renters occupied and vacated dwelling units.
    (5) A chronological list of complaints and requests for repair by dwelling unit occupants related to this article, and all corrections made in response to such requests and complaints.

any information regarding race or national origin, Plaintiffs claim they can determine which individuals are of Somali origin simply by looking at their names. *Pls' Mem. at 16.* Plaintiffs have not offered any reason to believe this is possible. Rather, Plaintiffs claim the United States Supreme Court approved of "the government's use of Spanish surnames as proof of national origin" in *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977).

"The Government's theory of discrimination" in *Int'l Bhd. of Teamsters v. United States*, "was simply that the company . . . regularly and purposefully treated Negroes and Spanish-surnamed Americans less favorably than white persons." 431 U.S. at 335. In other words, the government alleged the company discriminated against individuals based on whether they had a "Spanish-surname." Plaintiffs, however, do not claim the Rental Housing Ordinance discriminates based on an individual's surname. However, like the company who engaged in national origin discrimination, Plaintiffs believe they can generalize about an individual's national origin by reference to their name alone. This is not the case.

While Plaintiffs have failed to offer any genuine explanation for how the occupancy registers are relevant, there can be no doubt producing them would

---

Such a register shall be made available for viewing or copying by the City of Faribault at all reasonable times.").

involve an undue burden. For example, in the City of Faribault, there are 737 active licenses for rental properties. *Affidavit of Deanna Kuennen (April 17, 2019)*, ¶ 2. These 737 licenses are held by 384 different individuals or entities. *Id.*

According to City Staff, in order to properly identify the contact information for each Licensee, each license would need to be individually reviewed because many of the Licensees did not provide e-mail information. *Id.* ¶ 3. This is not something the City requests as part of the application process. *Id.* Rather, as part of the City's Rental Licensing Ordinance,[8] each Licensee is required to maintain an occupancy register which must be made available for review and copying by the City at all reasonable times. *Id.*, ¶ 4. The Ordinance, however, does not permit the City to demand a Licensee reproduce such a register, or send it to the City. As result, the City would need to coordinate with 384 separate individuals or entities to acquire all of the occupancy registers.

The City acknowledges some Licensees may voluntarily send the occupancy register to the City upon request, there is no requirement they do so. *Id.*, ¶ 5. As a result, the City may be required to personally go to the premises to view and copy the information of a substantial number of Licensees. It is also anticipated there would be substantial follow-up required to obtain all of this

---

[8] Rental Licensing Ordinance states "[s]uch a register shall be made available for viewing or copying by the City of Faribault at all reasonable times." FARIBAULT, MINN. CITY CODE, Sec. 7-40(g).

information, as some Licensees may not immediately respond to the request and some Licensees may need to actually create the register. *Id.*

City Staff is not aware of the City ever requesting a Licensee produce their occupancy register, and conducting such activities are not a part of any staff member's regular duties. *Id.,* ¶ 6. As such, a staff member would need to be assigned these tasks in addition to their regular duties.

Even taking into consideration there are 384 individuals or entities which hold the 737 active licenses, City Staff estimates it would take on average an hour interacting with all of these individuals and entities, including follow-up time, to acquire all of the occupancy registers. *Id.,* ¶ 7. Assuming the staff member (at an hourly rate of approximately $30 an hour) assigned these tasks spends six hours a day accomplishing their regularly assigned duties, and two hours a day working on these tasks, plus an additional two hours of overtime, it would likely take months to assemble all the registers, at a substantial cost to the City.

Based on the estimate of time and resources involved to obtain the occupancy registers, the City is faced with a tremendous burden in responding to Plaintiffs' request for documents. Furthermore, this estimate does not include the time it would take to follow up with Licensees who fail to produce the register initially upon demand. In light of the marginal benefit these documents have in

resolving the issues at stake in this action, the burden and expense of the proposed discovery outweighs its likely benefit.

## CONCLUSION

For the foregoing reasons, the City of Faribault respectfully requests this Court deny Plaintiff's Motion to Compel Discovery.

IVERSON REUVERS CONDON

Dated: April 17, 2019

By s/ Paul D. Reuvers
   Paul D. Reuvers, #217700
   Jason J. Kuboushek, #0304037
   Andrew A. Wolf, #398589
9321 Ensign Avenue South
Bloomington, MN 55438
(952) 548-7200
paul@irc-law.com
jasonk@irc-law.com
andrew@irc-law.com

*Attorneys for Defendant City of Faribault*