UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| THELMA JONES, PRIYIA LACEY, FAISA ABDI, ALI ALI, RUKIYA HUSSEIN, LUCIA PORRAS, DAVID TROTTER-FORD, AND SOMALI COMMUNITY RESETTLEMENT SERVICES, INC.,<br><br>*Plaintiffs*,<br><br>v.<br><br>CITY OF FARIBAULT,<br><br>*Defendant*. | Case No. 18-CV-01643 (JRT/HB)<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL** |

Pursuant to the Court's April 29 Order Establishing Briefing Schedule and Protocol for *In Camera* Review of Documents Withheld Based on Attorney-Client Privilege or Work-Product Doctrine (ECF-50), Plaintiffs Thelma Jones, Priyia Lacey, Faisa Abdi, Ali Ali, Rukiya Hussein, Lucia Porras, David Trotter-Ford, and Somali Community Resettlement Services, Inc. ("Plaintiffs") file this supplemental brief in support of their Motion to Compel Defendant, the City of Faribault ("Defendant" or "City"), to produce documents the City has withheld on unsubstantiated claims of privilege.

## I.     FACTUAL BACKGROUND

Plaintiffs refer the Court to its Memorandum of Law In Support of Plaintiffs' Motion to Compel for a detailed discussion of the relevant facts motivating this motion (ECF-33 at 2–5), on which the Court heard argument on April 25, 2019 (ECF-48).[1]

At the conclusion of the April 25 hearing, the Court ordered the City to provide Plaintiffs with additional information necessary to evaluate the City's privilege claims, specifically, a "key" elaborating on the roles and responsibilities of persons identified in its privilege log. (*See* ECF-48). The Court ordered the City to provide this key by close of business on Monday, April 29. (*Id.* at 2.)

On April 29 the City e-mailed Plaintiffs[2] a new privilege log ("Log # 3")[3]—without explanation of how it differed from its previous log—along with the Key ordered by the Court ("Key").[4] The City also produced, without comment, all or portions of 77 of the 217 documents it had been withholding on claims of privilege.[5] Upon reviewing Log # 3, Plaintiffs noted discrepancies in the labeling of documents between Log # 3 and the City's previous log produced on April 10 ("Log # 2"). Accordingly, Plaintiffs asked the City to explain how Log # 3 differs from Log # 2. The City explained that changes in the

---

[1] All dates are 2019 unless noted.

[2] E-mail from Wolf to Ortiz (April 29, 2019, 4:34 PM), attached as Ex. F.

[3] Def's 2d Supp. Priv. Log., Apr. 29, 2019, as modified on May 2, 2019, attached as Ex. G.

[4] Key to Def's 2d Supp. Priv. Log., Apr. 29, 2019, attached as Ex. H.

[5] To date, the City has declined, despite Plaintiffs' requests, to provide any of these documents in accordance with the governing ESI protocol (*see* ECF-21-1).

Bates Label/Control Number column from one log to the next reflect that a previously withheld document (as shown on Log # 2) had now been produced (as shown on Log # 3).[6] The City confirmed that the entry numbers in each log refer to the same documents.[7]

On May 6, Plaintiffs e-filed with the Court a letter identifying, by entry number from Log # 3, twenty-two documents for *in camera* review: Nos. 1, 5, 6, 7, 8, 9, 11, 12, 14, 20, 25, 53, 56, 57, 85, 91, 115, 144, 154, 190, 195, and 198. Upon further review, Plaintiffs withdraw their request for *in camera* inspections of Entry Nos. 5, 6, 7, 20, 115, and 144. Plaintiffs do this not because they are convinced the claims for these entries are justified but, rather, because the defects reflected in those entries are adequately represented by the remaining sixteen entries.

Plaintiffs ask that the Court proceed with *in camera* review of Entry Nos. 1, 8, 9, 11, 12, 14, 25, 53, 56, 57, 85, 91, 154, 190, 195, and 198 from Log # 3 for the reasons described below.

## II.  ANALYSIS

### 1.  Classes of Defects in the City's Privilege Claims

The sixteen selected entries represent classes of documents that have one or more of the following defects in the City's claims of attorney-client privilege:

    a.    Documents sent or received by individuals whose roles and responsibilities, as described in the Key, suggest they were not

---

[6] E-mail from Ortiz to Wolf (May 2, 2019, 2:39 PM); E-mail from Wolf to Ortiz (May 2, 2019, 4:17), attached as Ex. I.

[7] *Id.*

      entitled to solicit or receive legal advice from the City's attorneys. These illustrate the City's failure to satisfy all five elements of the Eighth Circuit's *Diversified Industries* test.[8] Of the sixteen entries under review, this defect is present in entry nos. 1, 8, 9, 11, 12, 14, 56, 57, 59, and 154.

b. Documents with no attorneys identified as senders or recipients and no other evidence suggesting they contain the solicitation or provision of legal advice. Obviously, without an attorney acting as a lawyer there can be no attorney-client privilege.[9] Entry nos. 53, 91 and 198 have this defect.

c. Documents that are attachments to e-mails with insufficient evidence to show they are confidential communications. A document that preexists its transmission in an e-mail or is otherwise maintained apart from the transmitting e-mail does not become privileged

---

[8] The test establishes under what circumstances communications between an organization's counsel and its employees are privileged. "[T]he attorney-client privilege is applicable to an employee's communication if (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents." *In re Bieter Co.*, 16 F.3d 929, 935–36 (8th Cir. 1994) (quoting *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir. 1977) (*en banc*).

[9] *United States v. Horvath*, 731 F.2d 557, 561 (8th Cir. 1984) (noting that attorney-client privilege does not apply where an attorney acts as a scrivener for client); *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, No. 15-CV-3183 (ADM/LIB), 2017 WL 9325027, at *4 (D. Minn. May 5, 2017).

4

          merely because it was sent to an attorney for his or her review.[10]

          Entry nos. 1, 9, 11, 12, 14, 85, and 190 have this defect.

    d.    Documents belonging to a third party, Faribault's Housing and Redevelopment Authority ("HRA"), thus suggesting, given the City's custody of them, that the HRA did not keep them confidential.[11] Entry nos. 25, 85, 190, 195, and 198 have this defect.

    **2.**    **Entry-by-Entry Discussion**

    <u>*Entry Nos. 1 and 9*</u>

Entry No. 1 is a Word Document, created or last modified on December 6, 2013, entitled "Rental License Category Criteria Policy." The entry shows it was attached to an

---

[10] *See Fisher v. United States*, 425 U.S. 391, 403–04 (1976) ("This Court and the lower courts have thus uniformly held that pre-existing documents which could have been obtained by court process from the client when he was in possession may also be obtained from the attorney by similar process following transfer by the client in order to obtain more informed legal advice."); *see also Columbia Ins. Co. v. Tibbott*, No. 11-CV-1040 (PAM/SER), 2012 WL 13027067, at *4 (D. Minn. June 21, 2012) ("The privilege does not apply to communications with the attorney that merely disclose underlying facts.") (citing *Sedco Intern., S.A. v. Cory*, 683 F.2d 1201, 1205 (8th Cir. 1982)); *P. & B. Marina, Ltd. P'ship v. Logrande*, 136 F.R.D. 50, 56 (E.D.N.Y. 1991), *aff'd sub nom. P&B Marina Ltd. v. LoGrande*, 983 F.2d 1047 (2d Cir. 1992) ("Merely attaching such documents to attorney-client communications does not constitute a basis for assigning the privilege"); *Pacamor Bearings v. Minebea Co., Ltd.*, 918 F. Supp. 491, 511 (D.N.H. 1996) ("Attachments which do not, by their content, fall within the realm of the privilege cannot become privileged by merely attaching them to a communication with the attorney").

[11] *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 2017 WL 5188342, at *2 ("Disclosure to a third person waives the attorney-client privilege as the privilege has its basis in the confidential nature of the communication and ceases to exist if confidentiality is destroyed.") (citation omitted).

e-mail sent over three months later, on March 13, 2014, by former Building Inspector Dave Mathews to five others including one attorney. The entry raises several questions.

First, does this document qualify as a communication soliciting advice from counsel? The title suggests it is a written policy, not a solicitation for legal advice. Second, the City provided no evidence it was kept confidential—by Mathews or anyone else—in the three months before it was sent to counsel in March 2014 or thereafter. Finally, even if it qualifies as a solicitation to counsel, it is unclear why a building inspector would be entitled to solicit legal advice from the City's attorneys on this policy. To meet its burden under *Diversified Industries*,[12] the City must show that one of Mathews' supervisors asked him to secure legal advice from counsel; that his solicitation was on a topic within Mathews' job duties;[13] *and*[14] that all recipients of this document *needed* to hear that solicitation. The City has failed to do so.

Entry No. 9 is a Word Document, created or last modified on March 13, 2014, entitled "Rental Dwelling Licenses FA105-27—440663.v3.City Response," attached to

---

[12] *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir. 1977) (*en banc*).

[13] The Key says Mathews "was tasked by Brain [sic] Anderson with developing the initial draft of the Rental Licensing and Crime Free Housing Program Ordinance, and was directly involved in the drafting, introduction, discussion, passage, and revision of the current." It is unclear what the City means by the phrases "developing the initial draft" and "directly involved." The word "develop" is too vague to clarify what role Mathews *actually* had with respect to the ordinance. The phrase "directly involved" is equally unhelpful. To be "directly involved" in some task does not mean you are *necessary* to complete the task, which is the standard the City must meet here.

[14] *Inline Packaging*, 2017 WL 9325027, at *6 ("As evidenced by the conjunctive form of the preceding sentence, all five factors [of the *Diversified Industries* test] must be shown to establish attorney-client privilege in the corporate setting.").

the same e-mail as entry no. 1 and suffering from the same defects: insufficient evidence to show (a) it is a communication at all; (b) it was kept confidential; (c) that Mathews was entitled to solicit legal advice on it given his job duties; (d) that he did so at the direction of his supervisor; and (e) that all recipients needed to know the contents of his solicitation.

### *Entry Nos. 8 and 53*

Entry Nos. 8 and 53 suffers from similar flaws. Entry No. 8 is an e-mail dated March 12, 2019, from Bohlen to Krenik and Delesha with the subject line "Re: FW: Rental housing ordinance comments."[15] Entry No. 53 is an e-mail dated March 7, 2017, from Krenik to Bohlen that purportedly contains legal advice, although the log identifies no attorney. For both entries, the City offers no evidence that a City attorney directed or controlled the dissemination of the purported legal advice[16] or that all the recipients of the purported legal advice needed to know it.[17] To illustrate the point, in March 2014

---

[15] Plaintiffs note that 2019 postdates both the 2014 and 2017 versions of the Ordinance at issue.

[16] "[S]ome corporate communications between non-attorney employees may be protected when under the direction of counsel in certain scenarios." *Wilson v. Corning*, Inc., No. CV 13-210 (DWF/FLN), 2014 WL 12600838, at *2 (D. Minn. Oct. 24, 2014) (holding minutes were not protected by attorney-client privilege because "the Court cannot conclude here that the communications between non-attorney employees reflected in the minutes were done at the direction and control of counsel[.]").

[17] *See Nat'l Credit Union Admin. Bd. v. CUMIS Ins. Soc'y, Inc.*, No. 16-CV-139 (DWF/LIB), 2017 WL 4898500, at *5 (D. Minn. Sept. 28, 2017) ("When communications involving corporations or other business organizations are at issue, the attorney-client privilege may be extended to communications with employees of the organization *only* if "the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.") (citations omitted).

7

Delesha was a Community Service Officer—not a supervisor—and "[r]esponsible for administering and coordinating the Crime Free Multi-Housing ["CFMH"] program, providing and facilitating CFMH trainings, and working closely with the city rental licensing and inspection program. [He was responsible] for providing and facilitating crime prevention services and problem-solving programs to assist the citizens of Faribault."[18]  The ordinance, however, was not effective until January 2015.[19]  Delesha, therefore, could not have been administering and coordinating the program in 2014.

### *Entry Nos. 11 and 12*

Entry Nos. 11 and 12 are equally flawed.  They are Word documents addressing the rental dwelling licenses, attached to an e-mail sent by City attorney Melissa Manderschied to City agents including former Building Inspector Dave Mathews.  The questions here include (a) whether the document communicated legal advice or whether the attorney was working as a scrivener or business advisor;[20] (b) whether this document was kept confidential; and (c) even if it was legal advice, whether Mathews, among the others, was entitled to receive legal advice from the City's attorneys given his job duties.

---

[18] Key at 17.

[19] *Compare* Amended Complaint, ECF-9, ¶ 53 (alleging that 2014 ordinance went into effect on January 1, 2015) *with* Answer to Amended Complaint, ECF-10, ¶ 45 (admitting allegation).

[20] *Horvath*, 731 F.2d at 561 (noting that attorney-client privilege does not apply where attorney acts as scrivener).

### *Entry No. 14*

Entry No. 14 is a Word Document entitled "Proposed Rental Dwelling Licenses City Draft 5-1.DOCX," created or last modified on May 1, 2014, at 10:22, sent as an attachment to an e-mail by Mathews to five others including one attorney. The questions here are (a) whether the document contains a solicitation for legal advice; (b) whether it was kept confidential; (c) whether Mathews was entitled to solicit legal advice from a City attorney given his job duties and directives (or lack thereof) from his supervisors; and (d) whether the recipients of this document needed to know its contents.[21]

### *Entry Nos. 25, 85, 190, 195, and 198*

Entry Nos. 25, 85, 190, 195, and 198 are e-mails from,[22] or Word documents created by,[23] Kim Clausen. They all suffer from insufficient evidence to show (a) they were solicitations or conveyances of legal advice; and (b) if they were, whether they were kept confidential.

---

[21] *See, e.g.*, *Ewald v. Royal Norwegian Embassy*, No. 11-CV-2116 SRN/SER, 2014 WL 1309095, at *10 (D. Minn. Apr. 1, 2014) (finding that e-mails submitted for *in camera* review were not privileged because of insufficient evidence to show that e-mails sent to recipients needed to know their contents).

[22] Entry Nos. 195 and 198 are e-mail messages about the Housing Improvement Program from Kim Clausen to an attorney and Deanna Kuennen (195) and Janna Viscomi (198). Assuming these messages conveyed otherwise privileged information, there is insufficient evidence to establish that either Kuennen or Viscomi needed to know the contents of Clausen's messages.

[23] Entries 25, 85, and 190 are e-mail attachments entitled "l-complaint.docx," "FINAL - HRA Loan Policy.docx," and "Eligibility Checklist.docx," respectively. The City provided no evidence showing they were kept confidential including nothing about the e-mails to which they were attached.

All five are categorized as "HRA," suggesting they belong to the Faribault HRA or their subject matter pertains to the HRA. The problem is the HRA is an independent entity from the City. This became clear during discovery, when the City failed to produce documents in response to two of Plaintiffs' Requests for Production ("RFP" or "RFPs") claiming they were within the custody or control of the HRA, not the City:

> 17. All documents related to the Downtown Housing Improvement Program.
>
> RESPONSE: Documents and data responsive to this request are within the custody and control of the Faribault Housing and Redevelopment Authority; a separate corporate entity, which operates independently from Defendant. Plaintiff should direct any request for information directly to the Faribault Housing and Redevelopment Authority.
>
> 18. All documents related to Plaintiff Priyia Lacey's application to the Faribault Housing and Redevelopment Authority ("H.R.A.") for housing, including all documents concerning or constituting the background check that the H.R.A. performed on her
>
> RESPONSE: See Response to Request 17. Defendant does not have any responsive documents or data within its custody or control.[24]

Despite the City's claim that it has no documents within its control related to the Downtown Housing Improvement Program, the City's Log # 3 shows that it *does* have such documents.[25]

---

[24] Def's Second Supplemental Response to Plaintiffs' First Set of Requests for Production at ¶¶ 17-18 (February 1, 2019), attached as Exhibit J.

[25] *See* Entry Nos. 195 and 198, among others. On May 9, at 6:44 PM ET, Plaintiffs received by e-mail from the City a document the City called its "Request Number Key," which it says details "the searches each document on the privilege was responsive to."

The question becomes, then, how did the City obtain these documents? If the City received them from the HRA—as it must have if its RFP responses are to be believed—then the HRA did *not* keep these documents confidential and any privilege claims the HRA may have had over them were waived.[26] Furthermore, to the extent that the privilege attaches, it is not the City's privilege to raise.[27] Accordingly, the HRA—much less the City—cannot claim these documents are now privileged.

### *Entry Nos. 56, 57, and 154*

These entries all involve the question of why the City Engineer needed to know the contents of these messages. Entry Nos. 56 and 57 are e-mail messages dated March 28, 2017 from Deanna Kuennen to, among others, then-City Engineer Tim Murray. Entry No. 154 is an e-mail message dated August 16, 2017, from Deana Kuennen to Tim Murray and attorney Alsop. Assuming these messages contain solicitations for legal advice on the rental licensing ordinance, there is insufficient evidence to show why the City Engineer needed to know the contents of that request.

---

The Court should reject this submission, if the City offers it, given that that City provided it to Plaintiffs 10 days after the Court's April 29 deadline to provide such a key. Notwithstanding, this is the first time, to Plaintiffs' knowledge, the City now admits it has documents in its custody that for months it claimed were within the sole possession of the HRA. The City's admission of the comingling of documents between the City and HRA shows those documents were not kept confidential and thus any privilege claim for them has been waived.

[26] *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 2017 WL 5188342, at *2 ("Disclosure to a third person waives the attorney-client privilege as the privilege has its basis in the confidential nature of the communication and ceases to exist if confidentiality is destroyed.") (citation omitted).

[27] *See U.S. v. Hatcher*, 323 F.3d 666, 674 (8th Cir. 2003) ("[T]he attorney-client privilege is personal and cannot be asserted by anyone other than the client.").

The City's explanation for why the City Engineer needed to know this information is unpersuasive: "Tim Murray was included on two e-mails (56 & 57) which discussed Topics for a meeting with City Attorney Scott Riggs. The topics concerned various miscellaneous Community and Economic Development Matters—including the Rental Licensing Ordinance—a number of which mutually involved the Engineering Department." Again, there is no indication how or to what extent the Engineering Department was involved in the Rental Licensing Ordinance such that the City Engineer needed to be included in privileged communications about it.[28]

### *Entry No. 91*

Entry No. 91 is an e-mail message from Marty Smith to Deanna Kuennen. The Log says it is a "[t]hread contain[ing] confidential communication to City Attorney (Robert A. Alsop) for the primary purpose of soliciting legal advice." That, however, cannot be correct because Alsop is not listed as a recipient.

---

[28] The City has offered no explanation why the City Engineer needed to know the contents of the message at Entry No. 154. Murray did not become Acting City Administrator until August 18, 2017.

### III.  CONCLUSION

For these reasons, the Court should grant Plaintiffs' Motion to Compel and order Defendant to produce, not only the 16 documents selected for *in camera* review, but all documents it continues to withhold under unsubstantiated claims of attorney-client privilege.

Date: May 10, 2019

                                          Respectfully submitted,

                                          */s/ Alejandro A. Ortiz*

                                          Alejandro Ortiz*
                                          Jennesa Calvo-Friedman*
                                          Mark Carter*
                                          Joshua David Riegel*
                                          AMERICAN CIVIL LIBERTIES UNION FOUNDATION
                                          125 Broad St., 18th Floor
                                          New York, NY 10004
                                          Tel: (646) 885-8332
                                          ortiza@aclu.org
                                          jcalvo-friedman@aclu.org
                                          mcarter@aclu.org
                                          jriegel@aclu.org

                                          *Attorneys for Plaintiff*

                                          *Admitted *pro hac vice*